UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CR14AGF(MLM) |
| | ) | |
| Clifford Keith Hobbs, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the government's Motion for Determination of Admissibility Pursuant to Title 18 U.S.C. § 3501 [Doc. 25] and Defendant's Motion to Suppress Statements and Evidence. [Doc. 40]  In addition, defendant filed a *pro se* Notice of Dismissal of Counsel. [Doc. 45]  The government responded. [Doc. 46]

A hearing was held on April 23, 2012 on the issue of defendant's representation.  At the hearing, defendant indicated he wants to proceed *pro se.* After a lengthy colloquy, the court deemed defendant's Notice to be a Motion and granted the Motion.  The court then appointed Mr. Sean Vicente as stand-by counsel to assist defendant at trial.  In his Notice, defendant also raises several other issues including challenges to this court's jurisdiction.  The government included these issues in its response and they will be taken up herein.

Defendant has subsequently filed a *pro se* document entitled "Take Judicial Notice and Administrative Notice: In the Nature of a Writ of Error, *Coram Nobis*, and a Demand for Dismissal for Failure to State the Proper Jurisdiction and Venue

Pursuant to FRCP Rule 4(j)." [Doc. 48]  The government responded to this Motion to Dismiss. [Doc. 55]

On April 5, 2012 a Hearing was held on the suppression issues at which the government presented the testimony of Detective Chris Bosley of the Lincoln County Sheriff's Department, who for the past three years has been detached to the Missouri Internet Crimes Against Children Unit ("ICAC") headquartered in St. Charles, Missouri.  Defendant did not present evidence.  Based on the testimony and evidence adduced and having had an opportunity to evaluate the credibility and observe the demeanor of the witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Det. Bosley testified that the ICAC Unit investigates child pornography, conducts "undercover chats" and generally investigates internet-type sex crimes involving minors.  In addition to his regular police training, he has had undercover training and computer forensics training and specialized ICAC training.

He testified that on March 18, 2010 he was contacted by the principal of Silex High School, Bruce Workmeister.  He told Det. Bosley that one of his students, A.C., was receiving inappropriate texts from an adult male.  Det. Bosley told the principal to contact the school Resources Officer and then he responded to the high school.  Present in the principal's office were Mr. Workmeister, A.C. and her father and the school Resources Officer.  Mr. Workmeister showed Det. Bosley some of the text

messages that he had written down.  Gov.Ex.2.  A.C. was 16 at the time; her date of birth is July 6, 1993.

A.C. told Det. Bosley about receiving the messages.  Her cell phone showed that the messages written down by the principal were on the phone.[1]  She said Keith Hobbs is the father of her friend Cheyenne who goes by the name Sky Hobbs.  She said she had frequently stayed over at Sky's house.

Det. Bosley asked A.C.'s father if he could assume A.C.'s identity and gave him a consent form to allow him to do so.  A.C.'s father also signed a Consent to Search A.C.'s cell phone.  While A.C.'s father was signing the forms, a message came in from defendant.  After A.C.'s father signed , Det. Bosley responded to the message.  The phone was taken to St. Charles for an ICAC forensic exam and data was extracted.  The purpose of this was for Det. Bosley to see the texts and to understand the nuances of how A.C. texted.  Excerpts of the texts were put in a power point presentation for the court.  The disc and the accompanying paper form of the power point screens are Gov.Ex.1 and as indicated, will be provided to the District Court.  They are explicit sexual messages and are incorporated by reference as if fully set out herein.  At the hearing, Det. Bosley read each of the slides into the record.  The texts start on 3/17/10 at 5:00 P.M. and continue to 3/18/10.  Slide 5 is the one that came in at school while A.C.'s father was signing the Consents.  The texts continued on 3/19 /10.  A phone call came in on A.C.'s phone but Det. Bosley did not answer it.

---

[1]    The messages are of a graphic,  sexual nature.  The exhibits speak for themselves and all will be provided to the District Court at the time this R&R is filed.

Slides 13-16 are about arrangements defendant and A.C. (Det. Bosley under cover) made to meet for sex. They set up a time to meet in Troy, Missouri near the movies at approximately 7:30 P.M. Defendant said he would get his tan Malibu car washed then go to WalMart and buy condoms. He told A.C. to meet him by Imo's.

Following this exchange, Det. Bosley went to the prosecutor to discuss what charges they could bring against defendant. They decided Conspiracy to Commit Statutory Rape 2nd Degree was the proper charge. Det. Bosley ran defendant's Department of Revenue record and obtained defendant's driver's license photo and the license number of defendant's tan Malibu. He put together a team including deputies from the Lincoln County Sheriff's Department. There is only one movie theater in Troy and it is in the same plaza as the Imo's Pizza restaurant.

Det. Bosley and his team observed defendant get his car washed and then go to WalMart. The members of the team positioned themselves on the Imo's parking lot. After the trip to WalMart, Defendant's tan Malibu pulled onto the Imo's parking lot. Detective Stewart activated his lights and siren and stopped defendant for making sexual arrangements with a minor child.[2] Defendant's car was boxed in and Det. Bosley approached the car and ordered defendant to get out and told him he was under arrest for Conspiracy to Commit Statutory Rape 2nd Degree. Det. Bosley holstered his weapon and once defendant was handcuffed, the other members of the team holstered their weapons as well. Defendant was standing next to his vehicle

_____

[2]    Det. Bosley called the stop a "felony traffic stop" meaning the vehicle was stopped because there was probable cause to arrest defendant for a felony.

close enough to touch it or reach inside it.  After defendant was cuffed, Det. Bosley patted him down but found no weapons or other items of evidentiary value.  Det. Stewart did a protective sweep of defendant's vehicle for hazardous items or evidence of the crime charged.  He located condoms in the glove box (Gov.Ex.1, Slide 18), the Walgreen's receipt for the condoms (Gov.Ex.1, Slide 19[3]) and defendant's cell phone.

Det. Bosley advised defendant of his <u>Miranda</u> rights by reading from his <u>Miranda</u> rights card.  He told defendant he had the right to remain silent, that anything he said could be used against him, that he had the right to a lawyer and to have a lawyer with him during any questioning, and that if he could not afford a lawyer one would be appointed for him before any questioning.  Det. Bosley asked defendant if he understood and wanted to talk.  Defendant said he understood, did not want to talk and that he wanted an attorney.  Det. Bosley asked him nothing further.  During this time defendant was still within arms' reach of his car.  Defendant said "I told her she was too young.  I was just going to take her to dinner."  This statement was not in response to anything Det. Bosley said or asked.

Det. Bosley observed defendant.  He did not appear under the influence of alcohol or drugs.  He did not slur his words.  No one else spoke to defendant besides Det. Bosley as set out above.  No one coerced or threatened or intimidated defendant at any time.

---

[3]	Gov.Ex.8 is a photo of the Walgreen's receipt in an evidence bag showing the cost of the condoms was $18.59; $20 was presented.  It shows the date of 3/19/10, the time of 19:21:01 which is right before defendant attempted to meet A.C. at Imo's in order to have sex with her.

Det. Bosley testified that the search of defendant's vehicle was in part for officers' safety and in part for locating evidence of the crime charged. In addition, Det. Bosley decided to have the car towed because the vehicle was used to facilitate a crime. Det. Bosley employed the Lincoln County Sheriff's Department policies (Gov.Ex.3, Page 900 [Page 5 of the Exhibit]). It states the circumstances under which deputies may tow a vehicle: (c) After an arrest, if there is no responsible party to whom to turn over the car. If a vehicle is towed, a tow sheet (Gov.Ex.4) must be completed which includes, *inter alia,* any property in the car. This necessitates an inventory search. Gov.Ex.5 is an evidence log of the items seized: the condoms, the WalMart receipt for the condoms, the cell phone and surveillance videos from WalMart showing defendant in the condom aisle.

Det. Bosley then applied for state charges. He filled out his Probable Cause Form (Gov.Ex.6) and a Felony Complaint for Conspiracy to Commit Statutory Rape, 2nd Degree was issued together with an Arrest Warrant (Gov.Ex.6).

On 3/22/10 Det. Bosley applied for a Search Warrant for examination of defendant's cell phone (Gov.Ex.7). The Search Warrant was signed by a Lincoln County Judge on 3/22/10.[4]

On cross examination Det. Bosley was asked if he knew if defendant was in the military or was a federal employee. He said he had no such knowledge. He was asked if the Imo's parking lot where defendant was arrested was federal property. He said he did not think it was federal property. He was asked if defendant was

---

[4] Defendant does not challenge this search.

originally charged in state court.  He acknowledged that defendant was originally charged in state court.

## CONCLUSIONS OF LAW

The court will take up the suppression issues first and then proceed to the other matters raised by defendant.

## I.    Probable Cause

Defendant challenges the initial stop of vehicle because the police did not have probable cause to believe he committed a traffic violation.  He challenges his arrest, the search of his vehicle and subsequent seizure of the condoms, receipt for the condoms and cell phone as well as his statement as the fruits of the illegal stop, citing Wong Sun v. United States, 371 U.S. 471 (1963).

Defendant correctly states that a traffic violation can provide probable cause to stop a vehicle.   It is well established that when a police officer observes a traffic violation - - however minor - he has probable cause to stop the vehicle.  Whren v. United States, 517 U.S. 806(1996);   United States v. Gomez Serena, 368 F.3d 1037, 1040 (8th Cir. 2004) (Police officer can stop vehicle with expired tags);   United States v. Foley, 206 F.3d, 802, 805 (8th Cir. 2000); United States v. Bell, 86 F.3d 820 (8th Cir.), cert. denied, 519 U.S. 955 (1996); United States v. Garcia, 23 F.3d 1331, 1334 (8th Cir. 1994); United States v. Ramos, 20 F.3d 348, 351 (8th Cir. 1994); United States v. Miller, 20 F.3d 926 (8th Cir. 1994); United States v. Barahona, 990 F.2d 412 (8th Cir. 1993); United States v. Cummins, 920 F.2d 498, 500 (8th Cir.

1990), <u>cert. denied</u>, 502 U.S. 962, 112 S.Ct. 428 (1991); <u>see Pennsylvania v. Mimms</u>, 434 U.S. 106 (1977); <u>United States v. Pillow</u>, 842 F.2d 1001 (8th Cir. 1988).

However, defendant overlooks the fact that a traffic violation is not the only basis for a finding of probable cause. Law enforcement officers may arrest a person without a warrant if they have probable cause to believe that the person has committed or was committing a crime. <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975); <u>United States v. Watson</u>, 423 U.S. 411 (1976). Probable cause for arrest exists if at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the person had committed or was committing an offense. <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964). <u>See also</u> R.S.Mo. § 544.216 (a municipal law enforcement officer may arrest on view without a warrant any person about whom he has reasonable grounds to believe has violated any law of this state).

The proper standard for determining whether probable cause exists is whether the arresting officer reasonably believes an individual has committed or is committing a crime. <u>United States v. Durile Lee Brown</u>, 49 F.3d 1346 (8th Cir. 1995). More specifically,

> [i]n determining whether probable cause exists to make a warrantless arrest a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense. Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and

experience. "[T]he probability, and not the *prima facie* showing, of criminal activity is the standard of probable cause."

Hannah v. City of Overland, MO, 795 F.2d 1385, 1389 (8th Cir. 1986) (quoting United States v. Wallraff, 705 F.2d 980, 990 (8th Cir. 1983)). See also, United States v. Torres-Lona, 491 F.3d 750, 756 (8th Cir. 2007) (for a finding of probable cause "there need only be a 'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity'"), quoting United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005). The criminal activity can be for an offense involving a felony, misdemeanor or infraction. See, United States v. Perdoma, 621 F.3d 745, 749 (8th Cir. 2010).

In the present case, there is no question that defendant was in the process of committing a felony at the time of the stop of the car and his arrest. He had been texting a 16 year old girl about engaging in sex with her. He knew she was only 16 years old. He told her he was going to have vaginal and anal intercourse with her when they met. He set up the meeting, time and place, and told her he would get his car washed and would buy condoms. Police officers observed defendant on his way to the meeting place, get his car washed and go to Walmart and purchase condoms. He then drove to the meeting place (the plaza where the Imo's restaurant was located), was identified through his driver's license photo, was stopped and placed under arrest for the felony of Conspiracy to Commit Statutory Rape, 2nd Degree.

It is clear that the officers had probable cause to believe defendant was involved in criminal activity. Det. Bosley had read defendant's sexually explicit messages sent to whom he believed was a 16 year old girl, defendant arrived at the

predetermined place after washing his car and going to Walmart for condoms as he had texted he would do.  See, e.g., United States v. Webster, 625 F.3d 439, 441 (8th Cir. 2010) (probability or substantial chance of criminal activity based on prior controlled buys, arriving at the scheduled place and time for the third buy, and the informant's actions that communicated to the officers that Webster possessed narcotics).

In the present case, based on the totality of the circumstances, Det. Bosley had probable cause to stop and arrest defendant.


II.     **Warrantless Search of Defendant's Vehicle**

Warrantless searches are unreasonable under the Fourth Amendment subject to specifically established and well-delineated exceptions.  United States v. Aguilera, 625 F.3d 482, 486 (8th Cir. 2010), citing Katz v. United States, 389 U.S. 347, 357 (1967).  One of the exceptions is known as the "automobile exception." United States v. Belton, 453 U.S. 454, 460-61 (1981) (when a law enforcement officer has made a lawful custodial arrest of the occupant of an automobile he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile and the contents of any containers in the passenger compartment, including the glove compartment, but not including the trunk.) "Officers 'may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.'" Webster, 625 F.3d

at 444, underline quoting, underline Arizona v. Gant, 556 U.S. 332, 351 (2009). [5] Here, the search was clearly valid under the first prong of underline Gant. The search was started as soon as defendant was asked to get out of his car. Det. Bosley immediately placed defendant under arrest right outside of the car. Defendant was in arms' length of his car when Det. Stewart began the search.

In addition, the second prong of underline Gant permits a search when it is "reasonable to believe the vehicle contains evidence of the offense of arrest." underline Id. at 445. Here, the officers had probable cause to arrest defendant for Conspiracy to Commit Statutory Rape, 2nd Degree. They knew he had texted a girl he knew to be only 16 about having sex with her. He said he would meet her at Imo's and would purchase condoms at Walmart. The officers observed him go to Walmart immediately before the meeting on the Imo's parking lot. The officers reasonably believed there would be evidence of the crime - - condoms and a cell phone - - in the vehicle. Therefore, the seizure of the condoms, the receipt for the condoms and the cell phone was lawful pursuant to underline Gant.

There is an alternative theory under which the district court may find the search and seizure to be lawful. Under the Lincoln County Sheriff's Department policy, the officers had to conduct an inventory search of defendant's vehicle because they had arrested defendant and there was no responsible party to whom to turn over the car. underline See, Gov.Ex.3. Therefore, they had to have defendant's vehicle towed

_____

[5] The automobile exception described in underline Belton was thus limited in 2009 by underline Gant.

and the tow sheet requires a list of any property in the car.  <u>See</u>, Gov.Ex.4 and Ex.5. An inventory search is an exception to the Fourth Amendment's warrant requirement and "permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search." <u>United States v. Garreau</u>, 658 F.3d 854, 857 (8th Cir. 2011).  "An inventory search is reasonable and constitutional if it is conducted according to standardized police procedures."  <u>Id.</u>

Here, the officers followed the Lincoln County Sheriff's Department policy (Gov.Ex.3) and inventoried the contents prior to the car's being towed.  They listed the items seized and photographed the contents of the car.  The evidence was properly seized under the inventory search exception.


III.    Defendant's Statement

Defendant made a statement after he was arrested and told why he was being arrested and after he was advised of his <u>Miranda</u> rights.  Defendant said he did not want to speak to Det. Bosley and that he wanted a lawyer.  Det. Bosley said nothing further to defendant.  Defendant then spontaneously said "I told her she was too young.  I was just going to take her to dinner."  It was not in response to any questioning by or conversation with Det. Bosley.

<u>Miranda</u> rights must be given when a defendant is in custody and interrogated. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). Custodial interrogation means questioning initiated by law enforcement officers after a person has been deprived

of his freedom of action in some significant way. <u>Miranda v. Arizona</u>, 384 U.S. at 467-73. Here, defendant was advised of his rights as soon as he was arrested. However, in addition to the requirement of custody, the defendant must also be interrogated for <u>Miranda</u> to apply. <u>Miranda v. Arizona</u>, 384 U.S. at 444. Interrogation is "express questioning or its functional equivalent." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980). A spontaneous statement by a person in custody does not warrant suppression. <u>United States v. McCoy</u>, 200 F.3d 582, 584 (8th Cir. 2000) (<u>Miranda</u> not applicable because defendant's statement was spontaneous and not in response to questioning by officer). In fact, "the Supreme court in <u>Miranda</u> expressly stated that '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admission is not affected by our holding today.'" <u>United States v. Butzin</u>, 886 F.2d 1016, 1018 (8th Cir. 1989) <u>quoting</u> <u>Miranda v. Arizona</u>, 384 U.S. at 478. Here, defendant was clearly in custody. He was fully advised of his <u>Miranda</u> rights as set out above. He invoked his right not to answer questions. However, he then blurted out his statement. Defendant's statement should not be suppressed. He was not interrogated or questioned in any way after being advised of his rights and his statement was completely spontaneous.

IV. **Other Issues Raised by Defendant**

1. **Discovery**

Defendant argues he has not received discovery such as a list of witnesses. Defendant requests this court to compel the government to disclose the names of all

witnesses for the government. The government opposes this request. This request is outside the scope of Rule 16 of the Federal Rules of Criminal Procedure, as it is well-established that the government is not required in non-capital cases to furnish this information. <u>United States v. Hutchings</u>, 751 F.2d 230 (8th Cir. 1984), <u>cert. denied</u>, 474 U.S. 829 (1985); <u>United States v. White</u>, 750 F.2d 726 (8th Cir. 1984). <u>See</u> <u>also</u>, <u>United States v. Constantine</u>, 2012 WL 987327, *2 (8th Cir., March 26, 2012). Defendant's request for a list of witnesses will be denied.

## 2.    Grand Jury Materials

Defendant also states he wants Grand Jury testimony transcripts. Grand Jury proceedings are prohibited from disclosure by Rule 6, Federal Rules of Criminal Procedure. The defendant alleges that he needs the material to prepare his defense for trial. Such a general request is not sufficient to require the broad scope of disclosure sought by the defendant. The kinds of information sought are particularly the kinds of things that Rule 6 seeks to protect. <u>See In re Grand Jury Investigation of Ven-Fuel</u>, 441 F.Supp. 1299, 1302-03 (M.D. Fla. 1977).

The disclosure of matters occurring before the grand jury is permitted only upon a showing of particularized need for such disclosure. <u>Pittsburgh Plate Glass Co. v. United States</u>, 360 U.S. 395 (1959). If a witness testifies at trial, his or her testimony before the Grand Jury, if any, constitutes a statement required to be produced. Fed.R.Crim.P. 26.2(f)(3). However, the production of such statements cannot be compelled prior to trial. <u>See Dennis v. United States</u>, 384 U.S. 855 (1966).

In this case defendant has not shown or provided a particularized need for disclosure of Grand Jury transcripts. The government has agreed it will provide all available Jencks material no later than the Friday preceding trial consistent with the practice in this district. 18 U.S.C. § 3500 (Jencks Act); Fed.R.Crim.P. 16(a)(2). This is conditioned on defendant's agreement to make available statements of defendant's witnesses at the same time. The government will also produce all Grand Jury transcripts, to the extent they constitute Jencks material, the Friday before trial and also conditioned on defendant's agreement to make available statements of defendant's witnesses at the same time. Therefore, the court will grant defendant's request for Grand Jury materials to the extent of the government's offer to produce and will deny it in all other respects.

3.     **Arrest**

To the extent defendant once again challenges his arrest, the issue has been addressed above. An arrest is constitutionally reasonable when an officer has probable cause to believe defendant has committed an offense in his presence. <u>Virginia v. Moore</u>, 533 U.S. 164 171 (2008). Here, Det. Bosley observed defendant in the act of committing the state offense of Conspiracy to Commit Statutory Rape, 2nd Degree. He was properly arrested.

To the extent defendant is claiming that federal law enforcement officers lacked authority to arrest him for the instant offense, he is mistaken. Defendant was arrested after a federal indictment was returned in this matter on January 18, 2012. <u>See</u>, Indictment, Doc.1. Rule 9(a) of the Rules of Criminal Procedures states in

pertinent part: "The court must issue a warrant . . . for each defendant named in an indictment. . .." An authorized officer may then execute an arrest warrant within the jurisdiction of the United States or anywhere else a federal statute authorizes. <u>See</u>, Rule 4(c)(1) and (2). "A warrant is executed by arresting the defendant." <u>See</u>, Rule 4(c)(3). A return is then filed with the court. <u>See</u>, Rule 4(c)(4). Defendant was arrested on January 23, 2012 in the Eastern District of Missouri and the return was properly filed with the court. <u>See</u>, Warrant Return, Doc. 18. <u>See also</u>, Gov.Ex.4. Law enforcement officers properly arrested defendant on the instant federal charges based on a warrant for his arrest.

To the extent defendant claims he was never presented with a valid arrest warrant, even assuming that such assertion is true, the Federal Rules of Criminal Procedure only require that defendant be informed of the warrant's existence and of the offense charged if the officer did not possess the warrant at the time of the arrest. <u>See</u>, Rule 4(c)(3). Then, only if the defendant requests a copy of the warrant must a copy be shown to the defendant. <u>Id.</u> Defendant does not claim he does not know why he was being arrested or that he ever requested the arresting officer to provide a copy of the warrant to him. A copy of the warrant is in the CM/ECF records of this case. [Doc. 18]

### 4. Double Jeopardy

Defendant argues his lawyer did not raise the issue of double jeopardy. His lawyer did not raise it because this charge is not barred by double jeopardy. "The Fifth Amendment prevents criminal defendants from being 'twice put in jeopardy'

in connection with the same offense, a guarantee that encompasses a second prosecution for the same offense after either conviction or acquittal as well as the imposition of multiple punishments.  A double jeopardy claimant bears the initial burden to establish a non-frivolous *prima facie* claim."  <u>United States v. Hively</u>, 437 F.3d 752, 762 (8th Cir. 2006) (citations omitted).  However, "[p]rosecution of a federal offense after the prosecution of a state offense arising out of the same acts, does not violate the Double Jeopardy Clause."  <u>United States v. Stroud</u>, 673 F.3d 854, 860 (8th Cir. 2012)  "According to the tenets of dual sovereignty, each sovereign derives its power from a different constitutional source, so both may prosecute and punish the same individual for the same act."  <u>United States v. Basile</u>, 109 F.3d 1304, 1307 (8th Cir. 1997) (citation omitted).  In the instant case defendant can be charged federally for the same acts charged in state court because of the tenets of dual sovereignty.

It is well established that the Double Jeopardy Clause does not bar a federal prosecution of a defendant who has been prosecuted for the same acts in state court. <u>United States v. Garner</u>, 32 F.3d 1305, 1310 (8th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1020 (1995), <u>citing</u> <u>United States v. Wheeler</u>, 435 U.S. 313, 316-17 (1978).  <u>See</u> <u>also</u> <u>Turley v. Wyrick</u>, 554 F.2d 840, 841 (8th Cir. 1977), <u>cert. denied</u>, 434 U.S. 1033 (1978), ("It is a basic principle of federalism that successive prosecutions by the state and federal governments do not constitute double jeopardy").  "The dual sovereignty doctrine is founded on the common law conception of crime as an offense against the sovereignty of the government.  When a defendant in a single act violates the 'peace

and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses'". <u>Garner</u>, 32 F.3d at 1310 <u>quoting</u> <u>Heath v. Alabama</u>, 474 U.S. 82, 88 (1985) <u>citing</u> <u>U.S. v. Lanza</u>, 260 U.S. 377, 382 (1922); <u>United States v. Johnson</u>, 516 F.2d 209, 212 (8th Cir.), <u>cert. denied</u>, 423 U.S. 859 (1975), (Fifth Amendment does not bar a federal conviction which follows a state conviction for the same act; acquittal of the state charge does not change this principle. <u>Citing</u> <u>Abbate v. United States</u>, 359 U.S. 187 (1959)) A claim of double jeopardy for successive prosecutions is inappropriate even if the elements are identical in both state and federal law because the proscription emanates from different sovereigns. <u>Ferina v. United States</u>, 340 F.2d 837, 839 (8th Cir.), <u>cert. denied</u>, 381 U.S. 902 (1965).

In addition, the correlative principles of *res judicata* and collateral estoppel do not bar the government from trying a defendant in a federal forum after a state prosecution. <u>Ferina</u>, 340 F.2d at 839. In <u>Ashe v. Swenson</u>, 397 U.S. 436 (1970) the Supreme Court held: "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." <u>Ashe</u>, 397 U.S. at 433. Clearly the collateral estoppel doctrine does not apply when different sovereigns and, thus, different parties are involved in the litigation. <u>Garner</u>, 32 F.3d at 1311; <u>Turley</u>, 534 F.2d at 842; <u>Johnson</u>, 516 F.2d at 211; <u>Ferina</u>, 340 F.2d at 839.

In the present case even if the state and federal government were not dual sovereigns, federal charges would not be barred by double jeopardy. Double jeopardy does not bar a subsequent federal prosecution where state charges were

dismissed before any jury was empaneled and sworn or that he pleaded guilty to the charges.  See, United States v. Vinson, 414 F.3d 924, 928 (8th Cir. 2005).  Here, the state charges against defendant were dismissed.  No jury was empaneled or sworn nor did defendant plead guilty to the charges.  Therefore,  jeopardy never attached to the state charges.

In addition, even if dual sovereignty principles did not apply and even if jeopardy had attached to the state charges, double jeopardy would not bar this prosecution because defendant is not charged in federal court with the "same offense" with which he was charged in state court.  If the two offenses cannot survive the "same elements" test, then the double jeopardy bar would apply.  This test, known as the "Blockberger test," asks whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.  Blockberger v. United States, 28 U.S. 299 (1932); United States v. Dixon, 509 U.S. 688, 696 (1993) (citations omitted).  If the offenses are not the same under the Blockberger test, double jeopardy does not apply even if the offenses involve the same conduct.  Id. at 711.

The government's Response to defendant's Notice of Dismissal of Counsel (Doc. 46) sets out at pages 8-10, a detailed analysis of the elements of the state charges and the federal charges and shows that each contains an element that the other does not.  This analysis is incorporated by reference as if fully set out herein.  The argument that the instant federal charges are barred by double jeopardy is thoroughly lacking in merit.

### 5. Jurisdiction

In his Notice of Dismissal of Counsel (Doc. 45) defendant argues that because he was not in the military, was not a federal employee and the crime was not committed on federally owned or controlled property, this court lacks jurisdiction

18 U.S.C. § 3231 provides: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States." "Pursuant to section 3231, federal district courts possess original jurisdiction over all violations of federal law." <u>United States v. Hayes</u>, 574 F.3d 460, 471 (8th Cir. 2009). Here, the Indictment alleges a violation of 18 U.S.C. § 2422(b).

Congress can enact laws that regulate interstate commerce, not just federally owned or controlled property. "The Commerce Clause of the Constitution grants Congress the power to regulate interstate commerce. U.S. Const. Art. 1, § 8, cl.3. This includes the ability to regulate channels of interstate commerce, instrumentalities of interstate commerce, and those activities that substantially affect interstate commerce. No additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated." <u>United States v. Trotter</u>, 478 F.3d 918, 920-21 (8th Cir. 2007) (citations omitted). In enacting section 2422(b), Congress exercised its power in regulating interstate commerce. Section 2422(b) states, in pertinent part:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal

offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

The interstate nexus requirement of §2422 is an element of the offense and is not jurisdictional. <u>See</u>, <u>e.g.</u> <u>United States v. Covington</u>, 565 F.3d 1336, 1343-44 (11th Cir. 2009). "Under the plain language of the statute, the government must prove that the defendant used a facility of interstate commerce - - here a cell phone - - to entice a minor to engage in unlawful sex." <u>Pettis</u>, 379 Fed. Appx. 864, 865 (11th Cir. 2010), <u>citing</u> <u>United States v. Murrell</u>, 368 F.3d 1283, 1286 (11th Cir. 2004). It is clear from the text of §2422 that Congress is regulating interstate commerce. Defendant's use of his cell phone to send and receive text messages as he did in the instant case is sufficient to establish a "use" of a facility or means of interstate commerce. <u>See</u>, <u>Pettis</u>, 379 Fed. Appx. at 865. (Defendant's use of his cell phone to send and receive text messages arranging to meet minor for sexual activity was sufficient to establish the interstate nexus of offense of using a facility of interstate commerce to attempt to entice or persuade a minor to engage in sexual activity as defined by state law, even if detective posed as victim and used her own cell phone to communicate with defendant.) Here, defendant's actions clearly fall within the jurisdiction of this court.

Defendant's citations purportedly in support of his position are not on point and his reliance on them is misplaced. <u>See</u>, Government's Response, Doc. 46 at pages 11-13.

The jurisdictional arguments raised in defendant's Notice of Dismissal of Counsel are without merit.

## V. Demand for Dismissal

Defendant has filed a "Take Judicial Notice and Administrative Notice: In the Nature of a Writ of Error *Coram Nobis*, and a Demand for Dismissal for Failure to State the Proper Jurisdiction and Venue Pursuant to FRCP Rule 4(j)." [Doc. 48] The government has responded. [Doc. 55] The court will deem this document a Motion to Dismiss.

Included with defendant's Motion were several documents, including his "Notification of reservation of Rights UCC 1-308/UCC1-207". In this Notification defendant writes that he is "a common man of the Sovereign People". (Doc. 48 at 8) The case of <u>United States v. Mitchell</u>, 405 F. Supp. 2d 602 (D. Md. 2005) states that Sovereign People or Citizens usually believe:

> That our nation is made up of two types of people: those who are sovereign citizens by virtue of Article IV of the Constitution, and those who are "corporate" or "Fourteenth Amendment" citizens by virtue of the ratification of the Fourteenth Amendment. The arguments put forth by the groups are generally incoherent, legally, and vary greatly among different groups and different speakers within those groups. They all rely on snippets of 19th Century court opinions taken out of context, definitions from obsolete legal dictionaries and treatises, and misplaced interpretations of original intent.

<u>Mitchell</u>, 405 F. Supp. 2d at 605 <u>quoting</u> THE ANTI-GOVERNMENT MOVEMENT GUIDE BOOK, National Center for State Courts (1999). The court goes on to say "the documents filed by sovereign citizens are typically filled with gibberish. Their requests can be as difficult to decipher as Lewis Carroll's famous poem, *Jabberwocky*, which begins with the ominous-sounding statement, 'Twas brillig, and the slithy toves/ Did gyre and gimble in the wabe. . . .'" Leslie R. Masterson,

"*Sovereign Citizens*": *Fringe in the Courtroom*, Vol. XXX Am. Bankr. Inst. J. 65, March, 2011. It is to be noted that defendant's Motion to Dismiss is no exception and is nearly identical to a publicly-available form located at http://unmasker4maine fileswordpress.com/2012/02/rod-1-26-12-new-coram-nobis-template-doc.pdf. See Government's Response, Doc. 55 at 2.

1.   *Coram Nobis*

Defendant entitles his Motion "In the Nature of a Writ of Error, *Coram Nobis*" (Doc. 48 at 1) *"Coram Nobis* is an extraordinary writ that usually is available only to petitioners who have fully served their sentences."  United States v. Monreal, 301 F.3d 1127, 1131-32 (9th Cir. 2002) (citation omitted); United States v. Freeman, 625 F.3d 1049, 1052, n. 2 (8th Cir. 2010) ( "[M]otion for a writ of error *coram nobis* was without merit as that extraordinary remedy is only available after conviction or sentence to a defendant who is no longer in custody 'to correct errors of the most fundamental character.'").  A judgment has not been entered in this case against the defendant;  he has served no sentence as yet.  Therefore, his reference to *coram nobis* is without merit.

2.   **Federal Rule of Civil Procedure 4(j)**

Defendant begins his argument with the statement that the Court is defined as a foreign state under Federal Rule of Civil Procedure 4(j).  Doc. 48 at 1.  It is not at all clear how defendant arrived at this so-called definition.  Rule 4(j) provides, in pertinent part:

(j)   **Serving a Foreign, State, or Local Government**

**(1) _Foreign State_.** A foreign state or its political subdivison, agency or instrumentality must be served in accordance with 28 U.S.C. §1608.

**(2) _State or Local Government_.** A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

**(A)** delivering a copy of the summons and of the complaint to its chief executive officer; or

**(B)** serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

The Federal Rules of Civil Procedure do not apply in this case because this is a criminal matter. Rule 1 of the Federal Rules of Civil Procedure provides in pertinent part that the Civil Rules of Procedure "govern the procedures of all <u>civil</u> actions and proceedings in the United States District Courts except as stated in Rule 81." <u>See</u> Fed.R.Civ.P. 1 (emphasis added) Criminal proceedings are governed by the Federal Rules of Criminal Procedure. <u>See</u> Fed.R.Crim.P. 1 ("These Rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States"). Rule 4(j) has absolutely no application in this matter.

### 3. Defendant's Demand for Disclosure of the Court's Jurisdiction

Defendant demands full disclosure of the true jurisdiction of this court. Doc. 48 at 2. "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. "Pursuant to Section 3231, federal district courts possess original jurisdiction over all violations of federal law." <u>United States v. Hayes</u>, 574

F.3d 460, 471 (8th Cir. 2009). Here the court has jurisdiction because the Indictment clearly alleges a violation of 18 U.S.C. § 2422(b). See also United States v. Foster, 443 F.3d 978, 981 (8th Cir. 2006) ("charging [defendant] with offenses against the laws of the United States provided the district court with statutory jurisdiction.").

In addition, Congress can enact laws that regulate interstate commerce. "The Commerce Clause of the Constitution grants Congress the power to regulate interstate commerce." U.S. Const. Art. 1, § 8, c. 3. This has been fully discussed above at p. 20-21 and need not be repeated. This Court has jurisdiction.

### 4. Defendant's Reliance on the Eleventh Amendment of the United States Constitution

Defendant states "As an American Citizen, I hold the inherent right of the 11th Amendment. 'The judicial power shall not be construed to extend to any suit in law or equity, commenced or prosecuted by a Foreign State'". Doc. 48 at 2. However, defendant neglects to include a complete and non-misleading quotation. The Eleventh Amendment actually provides: The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State." The Eleventh Amendment thus involves immunity from suits brought by citizens. Tennessee v. Lane, 451 U.S. 509, 517 (2004). The Eleventh Amendment does not provide citizens immunity from suits brought against them by the Federal Government. The Eleventh Amendment has no application to this case.

### 5. The Use of Capital Letters in the Indictment

Defendant opposes the spelling of his name in capital letters in the caption of the Indictment. Doc. 48 at 2. Once again, the <u>Mitchell</u> case provides enlightenment:

> This particular objection comes from a number of "sources." Some believe that the spelling (or misspelling or use of all capital letters) of their name is a sign of the movement toward 'one world government.' Others believe that all capital letters denotes a corporation, and that answering as a corporation subjects them to the illegitimate laws of the American judicial system. Some believe that all capital letters denotes "the Mark of the Beast," or that it is a denotation of a "war name."

<u>Mitchell</u>, 405 F. Supp. 2d at 606 <u>quoting</u> THE ANTI-GOVERNMENT MOVEMENT GUIDE BOOK, National Center for State Courts (1999).

Here, defendant appears to think that the use of all capital letters denotes a corporation. He states that he "is a non-corporate entity and is not registered with <u>any</u> Secretary of State as a CORPORATION" and therefore "the prosecution has FAILED to state a claim to which relief can be granted under FRCP 12(b)(6)." Doc. 48 at 3. Rule 12(b)(6) is a Rule of Civil Procedure. The Federal Rules of Civil Procedure apply to civil actions; this is a criminal prosecution.

In addition, to the extent defendant argues that the use of capital letters is somehow a defect in the Indictment, it was cured, without objection from the defendant, when the government filed its "Motion to Amend Indictment by Interlineation." Doc. 19. In that Motion, the government amended the Indictment by interlineation to include defendant's name spelled in upper case and lower case letters. The court granted defendant's Motion on January 27, 2012.

Case after case holds that the use of capital letters in the caption of an indictment is irrelevant to the issue of subject matter jurisdiction. See United States v. Mitchell, 405 F. Supp. 2d at 604; United States v. Montgomery, 2011 WL 976555, *6 (W.D. Mo. Feb. 22, 2011); United States v. Blackburn, 2010 WL 5185390, *4 (D. Kan. Dec. 15, 2010); United States v. Singleton, 2004 WL 1102322, *4 (N.D. Ill. May 7, 2004). Therefore, defendant was properly charged in the instant Indictment even if his name was spelled in all capital letters.

**6.     The Foreign Sovereign Immunities Act and 28 U.S.C. § 1330**

To the extent defendant concedes that this court has jurisdiction he incorrectly claims that its jurisdiction comes from the Foreign Sovereign Immunities Act of 1976 (FSIA) and 28 U.S.C. § 1330. Doc. 48 at 3. The FSIA has been described as follows:

> "[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.". . .Under the FSIA a foreign state is "presumptively immune" from the jurisdiction of American courts and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state.". . . The FSIA defines a foreign state as including "a political subdivision of a foreign state or an agency or instrumentality of a foreign state. . .."

Community Finance Group v. Kenya, 663 F.3d 977, 980 (8th Cir. 2001) (citations omitted). 28 U.S.C. § 1330 pertains to civil actions against a foreign state. It should go without saying that neither the FSIA nor 28 U.S.C. § 1330 applies here. This court has original jurisdiction pursuant to 18 U.S.C. § 3231 because defendant was properly indicted with an offense against the laws of the United States. See Mitchell, 405 F. Supp. 2d at 605.

## 7.    *Clearfield Trust* Doctrine

Defendant argues this action is a direct violation of the <u>Clearfield Trust</u> Doctrine.  Doc. 48 at 4.  <u>Clearfield Trust v. United States</u>, 318 U.S. 363 (1943), involves a civil suit to recover money on a check that had been forged.

> The primary doctrine derived from <u>Clearfield</u> is that federal common law will displace state law, and can be created by federal courts, only when "uniquely federal interests" are involved and the application of state law would "significantly conflict" with federal policy or objectives. <u>Boyle v. United Techs</u>, 487 U.S. 500, 507-08. . .(1988).

<u>Hillman v. United States</u>, 2001 WL 797315, \*5 (S.D. Ohio Jan. 11, 2011).  "Like nearly every other authority cited by [defendant] <u>Clearfield Trust</u> has no application to any issue in this case."  <u>Id.</u>

## 8.    50 U.S.C. § 23

Defendant also apparently believes he is fraudulently being prosecuted as an alien enemy resident.  He cites to 50 U.S.C. § 23.  Doc. 48 at 4.  This section provides:

> After any such proclamation has been made, the several courts of the United States, having criminal jurisdiction, and the several justices and judges of the courts of the United States, are authorized and it shall be their duty, upon complaint against any alien enemy resident and at large within such jurisdiction or district, to the danger of the public peace or safety, and contrary to the tenor or intent of such proclamation, or other regulations which the President may have established, to cause such alien to be duly apprehended and conveyed before such court, judge, or justice; and after a full examination and hearing on such complaint, and sufficient cause appearing, to order such alien to be removed out of the territory of the United States, or to give sureties for his good behavior, or to be otherwise restrained, conformably to the proclamation or regulations established as aforesaid, and to imprison, or otherwise secure such alien, until the order which may be so made shall be performed.

The proclamation referred to in § 23 is a Presidential proclamation "declar[ing] war between the United States and any foreign nation or government, or any invasion or predatory incursion . . . perpetrated, attempted or threatened against the territory of the United States by any foreign nation or government. <u>See</u> 50 U.S.C. § 21. Therefore, § 23 authorizes courts to cause alien enemy residents to be apprehended, and after a hearing, if sufficient cause appears, to order the alien to be removed from the United States. <u>United States ex rel Schlueter v. Watkins</u>, 67 F. Supp. 556, 563 (D.C. N.Y. 1946). It is patently clear that this section has no application to the instant matter.

### 9.    The United States Flag

Defendant refers to the 1959 Executive Order 10834. Doc. 48 at 5. This Executive Order involves modifying the United States flag after the admittance of Hawaii as a state. Defendant also references the 1933 National State of Emergency Clause in the same argument. <u>Id.</u> Apparently defendant's "far-fetched . . . argument [is] that the Constitution has been suspended since the Emergency War Powers Act in 1933." <u>Blackburn</u>, 2010 WL 5185390 at *4. The theory is that "the 1933 amendments to the Trading with the Enemies Act 'turned the American people into enem[ies] of the state,' and therefore the 'standard American flag in the courtroom was replaced with a military [a]dmiralty flag for dealing with alien enemy residents.'" <u>Id.</u> There is no factual basis for such claim. <u>Id.</u> "Jurisdiction is a matter of law, statute, and constitution, not a child's game where one's power is magnified or

diminished by the display of some magic talisman." <u>McCann v. Greenway</u>, 952 F. Supp. 647, 651 (W.D. Mo. 1997).

### 10. Transfer to Proper Venue

Defendant requests that this case be transferred to a court having proper venue <u>citing</u> 28 U.S.C. § 1631. Doc. 48 at 7 and 11. Defendant states the U.S. Attorney has committed fraud for failure to state the proper heading as "district court of the United States" instead of "UNITED STATES DISTRICT COURT." Section 1631 applies to civil matters, not to the current case. Rule 18 of the Federal Rules of Criminal Procedure provides, in part, "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." "Venue in federal criminal cases is a question of fact which is part of the prosecution's case. Although venue is not a substantive element of a crime, it must be proved in every criminal case. Unlike other facts in the prosecution's case, however, venue may be proven by mere preponderance of the evidence." <u>United States v. Blackburn</u>, 2010 WL 5014449 (D. Kan. Dec. 3, 2010) (Memorandum and Order). Venue is proper in an enticement of a child case in violation of 18 U.S.C. § 2422(b), which is a continuing offense, wherever the offense began, continued or concluded. <u>United States v. Byrne</u>, 171 F.3d 1231, 1235, n.2 (10th Cir. 1999); 18 U.S.C. § 3237(a). Both the Indictment and the testimony presented at the pretrial Evidentiary Hearing on April 15, 2012 clearly show that the crime occurred in the Eastern District of Missouri. Venue properly lies with this court in the Eastern District of Missouri.

### 11. Uniform Commercial Code

When defendant signed his name to his Motion, he followed his signature with "UCC 1-308/1-207." Doc. 48 at 17. Another document attached to his Motion states "Notification of reservation of Rights UCC 1-308/1-207." <u>See</u> Doc. 48-1 at 3. Apparently defendant believes he is somehow preserving his common law rights and avoiding submitting to federal jurisdiction by reference to the Uniform Commercial Code (UCC). <u>See</u> <u>Masterson</u>, "Sovereign Citizens:" Fringe in the Courtroom, Vol. XXX Am. Bankr. Inst. J. at 2. "[A] search of federal case law reveals that this Code Section has been invoked by some misguided defendants in tax-evasion cases, albeit with uniform failure." <u>United State v. McKinney</u>, 375 Fed. Appx. 479, 481-82 (6th Cir. 2010) (citations omitted). "These argument are patently without merit. Perhaps they would even be humorous - - were the stakes not so high. To begin with, the UCC has no bearing on criminal subject matter jurisdiction." <u>Mitchell</u>, 405 F. Supp. 2d at 604. Therefore, defendant did not preserve anything by signing his name in such a manner or attaching his Notification.

### 12. Denial of Constitutionally Protected Rights

Defendant claims he has been denied constitutionally protect rights under the Bill of Rights, the use of state and federal statutory laws as a defense, and the use of acts of Congress; and that this action is a violation of the <u>Clearfield Trust</u> Doctrine. Doc. 48 at 3-4. It is clear that defendant has not been denied any rights. He has exercised his right to file motions with this court, to proceed *pro se*, and to have a pretrial evidentiary hearing concerning Motions to Suppress that were filed. Other

than his bare assertion, defendant does not say how he has been prevented from defending himself and the court finds that this argument is without merit.

In conclusion, for all the reasons set out above, the court finds that defendant's demand for dismissal, deemed a Motion to Dismiss, should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Statements and Evidence be **DENIED**. [Doc. 40]

**IT IS FURTHER RECOMMENDED** that defendant's document entitled "Take Judicial Notice and Administrative Notice: in the Nature of Writ of Error *Coram Nobis*, and a Demand for Dismissal For Failure to State the Proper Jurisdiction and Venue Pursuant to FRCP Rule 4(j)", deemed a Motion to Dismiss, be **DENIED** in all respects. [Doc. 48]

**IT IS FURTHER RECOMMENDED** that to the extent defendant claims his arrest is unconstitutional, this claim should be **DENIED**. [Doc. 45-3]

**IT IS FURTHER RECOMMENDED** that to the extent defendant argues that this case is barred by the doctrine of double jeopardy, this claim should be **DENIED**. [Doc. 45-4]

**IT IS FURTHER RECOMMENDED** that defendant's contention that this court lacks jurisdiction because he was not in the military, was not a federal employee and the crime was not committed on federally owned or controlled property be **DENIED**. [Doc. 45-5]

**IT IS HEREBY ORDERED** that defendant's Request for Discovery such as a list of witnesses is **DENIED**. [Doc. 45-1]

**IT IS FURTHER ORDERED** that defendant's Request for Grand Jury Testimony Transcripts is **GRANTED** to the extent of the government's offer to produce and **DENIED** in all other respects. [Doc. 45-2]

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

This case is set for Trial before the Honorable Audrey G. Fleissig on <u>**July 2, 2012**</u> at <u>**9:00 A.M.**</u>

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this ___15th___ day of May, 2012.